138 N.J. Super. 497 (1976)
351 A.2d 406
STATE OF NEW JERSEY, PLAINTIFF,
v.
CORA RIGGINS, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided January 9, 1976.
*498 Mr. Joseph DiGeronimo, Assistant Deputy Public Defender II, for defendant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Alan Smith, Assistant Prosecutor, for the State (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
THURING, J.S.C.
This is a motion by defendant to suppress evidence obtained as a result of a search of her person on the ground that it was made under a general warrant.
On March 13, 1975, at 4 P.M., officers of the Jersey City Police Department entered the T & J Tavern pursuant to a search warrant. The purpose of the search was to uncover evidence of an alleged illegal lottery operation. The warrant authorized a search of the basement, the first floor where the tavern was located and the second-floor apartment over the tavern. The warrant also directed a search of certain named persons, the bartenders, barmaids and "all persons present" in the tavern.
In his application for the search warrant the detective-affiant stated that he received information from a source proven reliable in the past that illegal gambling activities were being carried on at the premises by one named Terry, various employees of his and others, some of whom were specifically identified by name. Prior to the issuance of the warrant police surveillance of the premises took place over several days. It revealed the presence of certain known gambling offenders and other unnamed persons known only by sight entering and leaving the premises. Police noted activity between the side door of the tavern and the door *499 leading to the upstairs apartment where, it was suspected, number slips were taken to "be worked on".
By virtue of the warrant the police searched the defendant, who was in the tavern at the time of the raid. She was not an employee of the T & J Tavern nor was she mentioned by name or description in the affidavit in support of the search warrant. The search of defendant uncovered a small note pad containing alleged illegal lottery play and cash in the amount of $11.05. She was arrested and charged with a violation of N.J.S.A. 2A:121-3(a) and (b), i.e., working for a lottery business and possessing lottery paraphernalia.
Defendant concedes that probable cause existed for the issuance of the warrant in question as to the premises to be searched but challenges the legality of the warrant as it relates to her on the ground that blanket authorization to search all persons found on the premises is in violation of her constitutional right to be secure from such police action.
The requisites for a valid search and seizure pursuant to a warrant are contained in the Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution. The Fourth Amendment reads, in pertinent part:
[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [Emphasis supplied]
Language similar to the above is found in the search and seizure provision of our State Constitution.
Whether a warrant permitting the search of unnamed persons at a specified place is sufficient or not depends upon the existence of probable cause to believe persons present are involved in the criminal event. State v. DeSimone, 60 N.J. 319, 327 (1972). "On principle, the sufficiency of a warrant to search persons identified only by their presence at a specified place should depend upon the facts." 60 N.J. at 321.
*500 The court in DeSimone found that the warrant to search an identified automobile and all persons found therein, on a showing that the automobile had been observed participating in a floating lottery operation, was based on probable cause and satisfied the specificity requirement so as to validate the search. DeSimone, however, is distinguishable from the present case because there the individual to be searched, a passenger, was identified by his close physical connection to the ongoing criminal event. Such nexus served to satisfy the specificity requirement and also to establish the requisite probable cause. In DeSimone the place to be searched was so limited and the illegal operation so overt as to delimit an otherwise broad category of individuals included in the directive to search "all persons present." "Such a setting furnishes not only probable cause but also a designation of the persons to be searched which functionally is as precise as a dimensional portrait of them." 60 N.J. at 322. The court also noted (at 323) that "presence in an automobile is more apt to suggest complicity in the illegal use to which the car is then being put than would be presence in a building in which some illegality may be occurring." Thus, the court found that the evil of a general warrant was negated by the restrictions inherent in the directive.
In the present case the place to be searched was a public tavern, which caters to transient numbers of individuals from all segments of society. Taverns have traditionally served the societal interest in and need for entertainment and community socializing. It is thus logical to assume that presence in a tavern would be for the legitimate purposes described. No rational conclusion leading to a probable cause belief that any person therein is involved in an illegitimate or criminal endeavor can be inferred from a patron's mere presence.
The court also finds that even if defendant had been implicated through prior police surveillance and her presence and complicity therein was suspected by the executing officers, the warrant and affidavit should have contained some *501 description, however minimal, of defendant. Although she remained unnamed throughout the entire period, some description of her appearance should have been provided. The court in State v. Malave, 127 N.J. Super. 151, 154 (App. Div. 1974), intimates that the requirement of particularity is "enhanced by the fact that the affiant in support of a warrant to search a place participates in its execution on the theory that this factor substantially diminishes the prospect of mistake." However, in Malave the warrant described the suspect as a "Puerto Rican male in his forties about 5' 6" in height medium build who lives at said address." The court held this description, coupled with the fact that the affiant participated in the warrant's execution, sufficiently identified the person to be searched. The court notes that in the present case, no attempt at description was made and the only identifying characteristic was "presence".
DeSimone, supra, suggests that "presence" may be a descriptive fact satisfying the aim of the Fourth Amendment "[s]o long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant". 60 N.J. at 322. The issuing magistrate in DeSimone properly made the reasonable assumption from the facts before him, from the very nature of the crime alleged and the instrumentality employed in its perpetration, that anyone present would be involved in the criminal design suspected. Furthermore, the reviewing court, limited to the very affidavit before the magistrate below, found it reasonable to conclude that any passenger in the car being used in the lottery operation was probably a party to such an event.
Here the issuing magistrate, when he authorized the blanket search, was not presented with facts and circumstances sufficient to equate one's mere presence at the suspect scene with illicit involvement. There was not present here the limited area search as in DeSimone. The tavern, although arguably housing an illegal gambling operation, was also open to the public for legitimate purposes. Both patrons and alleged gamblers frequented the premises. It is *502 quite possible that the illicit operations were covert in nature and went undetected by the tavern's various customers. Thus, the mere presence of an individual in a public place, absent other factors, is not sufficient to suggest involvement in criminal activity. Accord, United States v. DiRe, 322 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).
Ample case law supports the court's view in this regard. In Garrett v. State, 270 P.2d 1101 (Okl. Crim. App. 1954), the warrant directed not only the search of a filling station and beer tavern premises described therein, but in addition directed a search of "each and every person and vehicle" in said premises. The court invalidated the blanket warrant and noted: "Where a search warrant is issued for the purpose of searching a person, such person should be particularly described, and if his name is known it should be stated in the warrant." 270 P.2d at 1103. In Crossland v. State, 266 P.2d 649 (Okl. Crim. App. 1954), a warrant directing officers to execute a search of a cafe and "each and every person therein" was declared general and thus void because it authorized the indiscriminate search of a large number of people without naming or describing them.
In Willis v. State, 122 Ga. App. 455, 177 S.E.2d 487 (Ct. App. 1970), the warrant directed the search of Larry and Connie Franklin, their apartment and "any persons present who might reasonably be involved in the crime of possession of illegal drugs". (Emphasis supplied) The court upheld the warrant. It is interesting to note that in Willis the premises to be searched were private, not public. The persons to be searched, although not described by name or appearance, were identified by their close physical connection to the ongoing criminal event. The qualification, "persons * * * who might reasonably be involved," required a good faith estimation to be made by law enforcement officers before the search. Here no such limitation is present in the warrant. The warrant on its face did not require the executing officers to relate their suspicions of the illicit gambling operation occurring within the premises to the persons found *503 therein. Instead, the warrant authorized the blanket search of everyone present regardless of any prior determination of an individual's participation in the criminal activity. The evils of a general warrant could not be more pronounced.
For the reasons stated, the court finds the warrant void as to defendant. Defendant's motion to suppress evidence seized as a result of the search will be granted.